CASEY JENSEN, Esq. (Bar No. 263593)
Email Address: cjensen@deconsel.com
DeCARLO & SHANLEY, a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Facsimile (213) 488-4180

Attorneys for Plaintiffs, CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, <br><br> Plaintiffs, <br><br> v. <br><br> FABRIC WALLCRAFT OF CALIFORNIA, INC., a California corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR: <br><br> 1. DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS; <br><br> 2. SPECIFIC PERFORMANCE FOR SPECIFIC MISSING REPORTS; <br><br> 3. INJUNCTIVE RELIEF FOR FAILURE TO TIMELY FILE AND PAY EMPLOYER MONTHLY REPORTS; and <br><br> 4. SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT |

**JURISDICTION**

1. This is a civil action to recover fringe benefit contributions, for specific performance for specific missing reports, for injunctive relief to compel proper reporting, and for specific performance to conduct an audit. This action arises and jurisdiction of the court is founded as to Section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185a, and Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.

## PARTIES AND OTHERS

2. CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3. At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as PLAINTIFFS.

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown at this time to PLAINTIFFS. PLAINTIFFS therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when the same has been ascertained. PLAINTIFFS are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, either through its own conduct, or through the conduct of its agents, servants and/or employees, or in some other manner as yet unknown, and that PLAINTIFFS' damages as herein alleged were proximately caused by those defendants

6. At all relevant times Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to Section 302 of the LMRA, 29 U.S.C. §186, and are multiemployer plans

1 | within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

2 |     7.    At all relevant times the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

    8.    At all relevant times the Carpenters-Contractors Cooperation Committee ("CCCC"), was and is a non-profit California corporation which exists pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

    9.    CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, and the Carpenters-Contractors Cooperation Committee, and the Grievance Obligation Trust Fund (collectively, the "PLANS"), and as such is a plan fiduciary within the meaning of Section 3 of ERISA, 29 U.S.C. §1002.

    10.    The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any and all amounts due and owing to the respective PLANS by the employer as herein alleged.

    11.    Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America are labor organizations that are a party to the collective bargaining agreements involved.

12. At all relevant times, employer, FABRIC WALLCRAFT OF CALIFORNIA, INC., a California corporation, and DOES 1 through 5 ("EMPLOYER"), was and is a contractor engaged in the construction industry within the jurisdiction of the UNIONS.

## FIRST CLAIM FOR RELIEF FOR
## DAMAGES FOR FAILURE TO PAY
## FRINGE BENEFIT CONTRIBUTIONS

13. On or about September 8, 2010, EMPLOYER, agreed to be party to and bound by Proposition A/AA & Measure J Facilities Project Labor Agreement - Letter of Assent ("LETTER OF ASSENT"). A true and correct copy is attached hereto, marked as Exhibit "1" and incorporated hereby by reference.

14. On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, a Carpenters Memorandum Agreement, Single Project Agreement dated October 15, 2015 ("MEMORANDUM AGREEMENT"). A true and correct copy is attached hereto, marked as Exhibit "2" and incorporated herein by reference.

15. The LETTER OF ASSENT and the MEMORANDUM AGREEMENT bind EMPLOYER to the terms and conditions of the Master Labor Agreement between the United General Contractors, Inc. and Southwest Regional Council of Carpenters and its affiliated Local Unions of the United Brotherhood of Carpenters and Joiners of America, DATED July 1, 2012, and any renewals or subsequent Master Labor Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements ("collectively referred to as "AGREEMENTS").

16. The PLANS are third party beneficiaries of the AGREEMENTS and Master Labor Agreements.

17. The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees

performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

18. The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employer Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid. Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

19. In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the sum of $30.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater. This amount shall become due and payable to CSAC as liquidated damages in addition to the unpaid contributions or contributions paid late.

20. EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of the AGREEMENTS.

21. EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing to the PLANS from EMPLOYER in the amounts set forth in Exhibit "3".

22. The AGREEMENTS require EMPLOYER to pay for the expense of

1 | auditing EMPLOYER's business records if an audit by the PLANS indicates that
2 | EMPLOYER failed to report and pay all contributions.

3 |     23.    As a result of the failure to pay fringe benefit contributions in the
4 | manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the
5 | unpaid contributions from the first of the month following the date due, at the rate
6 | prescribed by the AGREEMENTS.

7 |     24.    The PLANS have conducted check stub audits, which indicate that
8 | EMPLOYER failed to report and pay all contributions owed during this time period.
9 | True and correct copies of the Audit Invoices and Audit Reports (social security
10 | numbers redacted), dated October 4, 2017 and April 18, 2018 are attached as
11 | Exhibit "4."

12 |     25.    As a result of the failure to pay fringe benefit contributions in the
13 | manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount
14 | equal to the greater of interest on the unpaid contributions as prescribed by section
15 | 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated
16 | damages provided for under the AGREEMENTS.

17 |     26.    It has been necessary for PLAINTIFFS to engage counsel to bring this
18 | action to compel compliance with the AGREEMENTS, and to recover the attorneys'
19 | fees and the costs for which EMPLOYER is liable pursuant to the AGREEMENTS
20 | and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2).

21 |     27.    The PLANS have complied with all conditions precedent.

22 |     28.    EMPLOYER is delinquent in contributions in a further sum, the exact
23 | amount of which is unknown to PLAINTIFFS, and PLAINTIFFS will move to
24 | amend this complaint when the true amount of the fringe benefit contribution
25 | delinquency is determined.

26 |     29.    CSAC has, concurrently with the filing of this complaint, served a copy
27 | of same upon the Secretary of Labor and Secretary of the Treasury.
28 | ///

## SECOND CLAIM FOR RELIEF FOR
## SPECIFIC PERFORMANCE FOR SPECIFIC MISSING REPORTS

30. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 29 of their First Claim for Relief, and allege for a Second Claim for Relief for Specific Performance for Missing Reports against EMPLOYER, as follows:

31. This action for specific performance arises and jurisdiction of the court is founded on Section 301 of the Labor-Management Relations Act of 1947 ("LMRA") (29 U.S.C. §185A) and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (29 U.S.C.A §1132).

32. The AGREEMENTS require EMPLOYER to complete and submit Employers Monthly Reports ("REPORTS") stating the amount of contributions owed along with fringe benefit contribution to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid for.

33. EMPLOYER has failed to submit REPORTS and contributions for the following months: December 2015 through June 2018.

34. The PLANS have no adequate or speedy remedy at law, as the PLANS are unable to calculate the amount owing.

## THIRD CLAIM FOR RELIEF FOR
## INJUNCTIVE RELIEF FOR FAILURE TO TIMELY FILE
## AND PAY EMPLOYER MONTHLY REPORTS

35. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 33 of their First and Second Claims for Relief and allege for a Third Claim of Relief for Injunctive Relief against EMPLOYER, as follows:

36. ERISA Section 502(a) provides in part: "A civil action may be brought

... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan. . . ."

37.  Additionally, Section 515 of ERISA (29 U.S.C. § 1145), as amended provides "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

38.  EMPLOYER has failed to submit REPORTS and/or remit full contributions to the PLANS for the period of December 2015 to June 2018, and may fail to furnish REPORTS or remit contributions to the PLANS for subsequent months.

39.  As a result of EMPLOYER's failure to submit REPORTS and/or pay contributions on the dates on which its contributions were due, EMPLOYER may have become indebted to the PLANS for contributions, liquidated damages and interest.

40.  PLAINTIFFS timely notified EMPLOYER by letter of each delinquency and of the assessment of each delinquency, and repeatedly demanded payment of the delinquencies. To date, EMPLOYER has failed to pay the delinquencies owed to the PLANS.

41.  EMPLOYER's failure to promptly pay its delinquencies to the PLANS on the dates on which such contributions were due is a violation of the AGREEMENTS.

42.  EMPLOYER's delinquencies to PLAINTIFFS have occurred from September 2015 and are continuing.

43.  EMPLOYER will continue to refuse or fail to pay contributions to the PLANS and thereby create future unpaid delinquencies during the remaining terms of the AGREEMENTS. Unless EMPLOYER is enjoined from failing to make its

contributions and restrained from incurring delinquencies, the PLANS will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the PLANS will be required to bring a multiplicity of actions at law to recover the delinquencies as they occur, to the PLANS' great expense and hardship. Further, unless EMPLOYER is so enjoined, based on experiences with other similarly situated employers, the PLANS have little prospect of ever collecting on the additional delinquencies incurred as such employers frequently petition for bankruptcy, dissolve or otherwise cease doing business as a result of the financial difficulties involved in their delinquencies, and the PLANS are unable thereafter to collect delinquencies thus owing.

**FOURTH CLAIM FOR RELIEF FOR**
**SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT**

44.     PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 43 of their First, Second and Third Claims for Relief, and allege for a Third Claim for Relief for Specific Performance to Conduct an Audit against EMPLOYER, as follows:

45.     The AGREEMENTS provide that the PLANS have the specific authority to examine the EMPLOYER's job cost records, general check registers and check stubs, bank statements and canceled checks, general ledgers, cash disbursements ledgers, worker compensation insurance reports, financial statements, corporate income tax returns, employee time cards, payroll journals, individual earnings records of all employees, forms W-2, 1099 and 1096 remitted to the U.S. Government, quarterly state tax returns, health and welfare and pension reports for all other trades, cash receipts' journal, copies of all contracts and all material invoices.

46.     The PLANS have requested access to EMPLOYER's business records for the purpose of conducting an audit.

47.     EMPLOYER has failed and/or refuses to allow the PLANS to complete

such an audit.

48. The PLANS have no adequate or speedy remedy at law.

49. It has been necessary for PLAINTIFFS to engage counsel to bring this action to compel compliance with the AGREEMENTS, and to recover the attorneys' fees and the costs for which EMPLOYER is liable pursuant to Section 502(g)(1) of ERISA and pursuant to the AGREEMENTS.

50. PLAINTIFFS have, concurrently with the filing of this complaint, served a copy of same upon the Secretary of Labor and Secretary of the Treasury.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

## FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF FOR DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS

1. For unpaid contributions in the sum of $30,318.63;

2. For interest and liquidated damages, as provided in the AGREEMENTS;

2. For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate presceibed by law), or liquidated damages as provided in the AGREEMENTS, in the amount to be determined.

## FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR SPECIFIC PERFORMANCE FOR SPECIFIC MISSING REPORTS

1. That EMPLOYER be compelled to forthwith submit the REPORTS for the following months along with the appropriate contributions: December 2015 through June 2018.

## FOR PLAINTIFFS' THIRD CLAIM FOR RELIEF FOR INJUNCTIVE RELIEF FOR FAILURE TO TIMELY FILE AND PAY EMPLOYER MONTHLY REPORTS

1. For issuance of both preliminary and permanent injunctions restraining

and enjoining EMPLOYER, for so long as EMPLOYER remains bound to make any payments or contributions to the PLANS, from failing to deliver or cause to be delivered to PLAINTIFFS, no later than the 25th day of the month:

    a.  A complete, truthful, and accurate Employer's Monthly Report to Trustees covering all employees of EMPLOYER employed during the previous month under the AGREEMENTS;

    b.  A declaration from a responsible employee of EMPLOYER attesting from his or her personal knowledge under penalties of perjury to the completeness, truthfulness, and accuracy for the Monthly Report; and

    c.  Check for the full amount owing on the Monthly Report.

2. For submission and timely payment of the Employers Monthly Reports to Trustees for the period December 2015 through the present, so long as the EMPLOYER remains bound to make any payments of contributions to the PLANS.

### FOR PLAINTIFFS' FOURTH CLAIM FOR RELIEF FOR SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT

1. That EMPLOYER be compelled to forthwith submit to completion of an audit of EMPLOYER's business records covering the period from October15, 2015 through the present, by the PLANS' auditors at the premises of EMPLOYER during business hours, at a reasonable time or times, and to allow the auditors to examine and copy the following books, records, papers, documents and reports of EMPLOYER:  all job cost records, general check register and check stubs, bank statements and canceled checks, general ledgers, worker compensation insurance reports, financial statements, cash disbursements ledgers, corporate income tax returns, employee time cards, payroll journals, individual earnings records of all employees, forms W-2, 1099 and 1096 remitted to the U.S. Government, quarterly state tax returns, health and welfare and pension report for all other trades, cash receipts' journal, copies of all contracts, and all material invoices;

## AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF

1. For reasonable attorneys' fees;
2. For audit costs;
3. For audit costs of this action;
3. For further contributions according to proof; and
4. For such other and further relief as the court deems proper.

Dated: August 23, 2018

DeCARLO & SHANLEY,
a Professional Corporation

By: _____
CASEY JENSEN
Attorneys for Plaintiffs,
CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION
and BOARD OF TRUSTEES FOR THE
CARPENTERS SOUTHWEST TRUSTS